**PORTER, Administrator, Office of Price Administration (FLEMING, Temporary Controls, Substituted) v. RABINOWITZ.**
**No. 11773.**

Circuit Court of Appeals, Fifth Circuit.
Feb. 19, 1947.
Rehearing Denied March 19, 1947.

David London, Director, Litigation Division, O.P.A. (Office of Temporary Controls), Albert M. Dreyer, Chief, Appellate Branch, O.P.A. (Office of Temporary Controls), and Leanora S. Gruber, Sp. Appellate Atty., O.P.A. (Office of Temporary Controls), all of Washington, D. C., and Leigh Carroll II, Enforcement Atty., O.P.A. (Office of Temporary Controls), of New Orleans, La., for appellant.

Julian L. Steinberg and Mervin H. Riseman, both of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

The administrator of the OPA brought this action[1] to enjoin violation of Maximum Price Regulation No. 541[2] and to recover treble damages in the amount of $10,373.47 for the "bulk sale" of raw muskrat pelts by one Al Rabinowitz, doing business as Victory Fur Company, at certain prices in violation thereof.[3] From a judgment rendered on a motion to dismiss for failure to state a claim upon which relief could be granted, the administrator appeals.

Section 9 of M.P.R. 541,[4] as amended, provides maximum prices for "kinds of

[1] Under 50 U.S.C.A.Appendix, §§ 925(a), 925(c), and 925(e).

[2] Promulgated pursuant to the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq.

[3] The administrator now admits that the question of the refusal of an injunction prayed for in the complaint was rendered moot by the decontrolling of furs and peltries. Recovery of treble damages is now the sole issue.

[4] Section 9 of M.P.R. 541, as amended, provides in part:

"Sec. 9. Maximum prices for certain raw, dressed or dressed and dyed furs and peltries.—(a) This section establishes maximum prices for the sale, purchase or delivery of the kinds of raw, dressed or dressed and dyed furs and peltries listed below. The specific price enumerated for a kind of raw, dressed or dressed and dyed fur or peltry applies only when the fur or peltry meets the description contained in Column II. The maximum price applicable to a sale, purchase or delivery of any other assortment or grade of any kind of raw, dressed or dressed and dyed fur or peltry listed shall be a price in line with the price enumerated for the assortment and grade described in Column II, making downward adjustments in accordance with the general practice in the trade during the base period of this regulation to reflect the customary differentials between the assortment or grade described and the assortment or grade being priced. Where a price is listed below for a kind of fur or peltry in the

* * * furs * * * listed" therein. For the maximum price of any "assortment or grade" not listed, section 9(a) provides a formula. That price under the formula is "in line with the price enumerated" adjusted downward "in accordance with the general practice in the trade * * * to reflect the customary differentials between the assortment or grade described and the assortment or grade being priced." Then in the following table "Muskrat, southern" is listed in Column I with "(a) Tops" in Column II and with "$1.77" in Column III.

| Column I<br>Kind | Column II<br>Description | Column III<br>Net price per skin (except as indicated)<br>Raw | Dressed or dressed and dyed (as indicated) |
|---|---|---|---|
| * * | * * | * | * |
| Lamb, Indian or "Bombay" (not including Moire). | (a) Nazukcha, Multan Province, No. I or Nos. I and II, white. | 2.70 | ———— |
| | (b) Two-tone gray, bulk lot, made from Nazukcha, Multan Province, No. I or Nos. I and II, raw white fur skins. | ———— | ,4.10 |
| | (c) Guldar, Multan Province, No. I or Nos. I and II, white. | 2.45 | ———— |
| Lamb, Lincoln | (a) No. I, minimum 33 kilograms per 100 skins. | 1.75 | ———— |
| | (b) American Broadtail, bulk lot, made from No. I Lincoln Lamb raw skins described in (a) above. | ———— | 3.05 |
| | (c) Ground blended for two-tone, bulk lot, made from No. I Lincoln Lamb raw skins described in (a) above. | ———— | 3.35 |
| * * | * * | * | * |
| Muskrat, northern (including Jersey and Russian). | (a) Extra large or extra large and large, No. I or Nos. I and II, best sections. | 2.30 | ———— |
| | (b) Dressed, made from northern muskrat raw skins described in (a) above. | ———— | 2.50 |
| Muskrat, southern | (a) Tops ............. | 1.77 | ———— |
| | (b) Dressed, made from southern muskrat raw skins described in (a) above. | | 1.95 |
| * * | * * | * | * |

raw state only, the dressed or dressed and dyed price for that kind of fur shall be determined under the other applicable provisions of this regulation and not under this section 9.

* * * * * *

In his amended complaint the administrator alleged that the defendant had sold at certain times, in certain quantities, "bulk lot" muskrat [5] pelts so as to overcharge $3,459.49 above the ceiling;[6] that "the customary differential in the trade during the base period between 'bulk lots' and 'tops' was not more than 74%, which, when applied to $1.77 for 'tops' as fixed by the Regulation, provides a maximum price of $1.31 for 'bulk lots';" that the Regulation is silent as to who should have the authority to determine the custom of the trade, but that it is the duty of the OPA Price Division to gather information and to make such mathematical calculations as may be necessary; that fourteen dealers in compliance with an inquiry filed figures for the base period that showed the average price for bulk lot was 73.88% of the average price filed for tops; that, when this percentage is applied to the figure of $1.77 for tops, specified by the Regulation, a price of $1.31 was determined to be the maximum price for bulk lots; that during at least part of the time involved it was generally recognized that the ceiling price for bulk-lot muskrat fur was $1.23 because the OPA had not permitted the State Conservation Department, one of the largest sellers of raw muskrat furs in "bulk lot" in the State, to sell its bulk-lot muskrats for a price higher than $1.23; that later the OPA redetermined this price to the level of $1.31.

The defendant gave three reasons for his motion to dismiss: (1) M. P. R. 541 does not cover "bulk lot" sales because "assortment or grade" in section 9(a) thereof does not include "bulk lot." (2) If M. P. R. 541 does cover "bulk lots," no maximum price was applicable because the plaintiff, by his own pleading, had not the authority to determine the "practice in the trade * * * to reflect the customary differentials," and defendant could not be expected to make the determination. And (3) that OPA's determination of $1.23 and subsequently $1.31 as the maximum price for bulk-lot sales of raw muskrat fur by the Louisiana Conservation Department was not sufficient notice to the rest of the industry of a determination of maximum prices, and that defendant had no notice of that determination.

The court below granted defendant's motion to dismiss on his first and second grounds. The sole question before us is the correctness of this ruling.

■ M. P. R. 541 does cover bulk-lot sales of southern muskrat fur. Section 2 thereof expressly states: "This regulation applies to all sales * * * of furs," with certain exceptions here irrelevant. Section 3(f) thereof defines "kind of sale" to include "bulk lot." Column II of the table following section 9 specifically lists prices for different kinds of furs and includes prices for "bulk lots" of two of the furs [7] listed.

Plaintiff's contention that M. P. R. 541 does not include "bulk lots" rests upon the meaning of "assortment" in this sentence of section 9: "The maximum price applicable to a sale, purchase or delivery of any other assortment or grade of any kind of raw, dressed or dressed and dyed fur or peltry listed shall be a price in line with the price enumerated for the assortment and grade described in Column II * * *." "Assortment" may have two meanings: It may mean "a group or class consisting of one sort" or it may mean "a collection containing a variety of sorts or kinds."[8] Plaintiff argues "assortment" has the first meaning and therefore excludes "bulk lot" from the pricing formula of section 9. Our foregoing analysis of the coverage of section 9 leads us to conclude that "assortment" has the second meaning, hence does not exclude "bulk lot" from the pricing formula set up in section 9.

■ Under our construction of section 9(a), the second and third reasons

---

[5] Tacitly, raw "southern" muskrat is implied throughout the complaint.

[6] The administrator alleged certain purchases at above ceiling prices, but he did not ask for damages based upon these overcharges.

[7] Lamb, Indian or "Bombay", and Lamb, Lincoln.

[8] Webster's International Dictionary.

given by plaintiff for his motion to dismiss are not cogent. In part, section 9(a) reads:

"The maximum price applicable to a sale * * * of any other assortment * * * shall be a price in line with the price enumerated for the assortment and grade described in Column II, making downward adjustments in accordance with the general practice in the trade during the base period of this regulation to reflect the customary differentials between the assortment or grade described and the assortment or grade being priced."

We believe that "the general practice in the trade * * * to reflect the customary differentials" has reference to a "habitual or customary practice among a * * * trade" known frequently as a "custom" but more correctly known as a "usage." [9] The "usage" must be proven as a fact.[10] The burden of proving the "usage" is upon the party who is asserting it.[11] The elements necessary for its proof are variously stated.[12] One court has said:[13]

" * * * A local custom [usage] must be well established, reasonable and generally known, of such age, uniformity of observance, certainty, fixedness of character and notoriety that a jury would be justified in saying that it was known to the party sought to be affected by it."

Since a party engaged in a particular trade will be presumed to know the usages of that trade,[14] the plaintiff need not show the defendant had specific knowledge of it.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

---

[9] 3 Williston on Contracts (2d Ed., 1872), § 649.

[10] 25 C.J.S., Customs and Usages, § 31, p. 123.

[11] 25 C.J.S., Customs and Usages, § 33, p. 126.

[12] 25 C.J.S., Customs and Usages, p. 78, § 2 et seq.

[13] In re Bowling Green Milling Co., 6 Cir., 1942, 132 F.2d 279, 283.

[14] 25 C.J.S., Customs and Usages, § 9, p. 84.